MOLINARI, J. pro tem.
 
 *
 

 This is an appeal from a judgment in favor of the plaintiff, retired fire chief, for declaratory relief and for alleged unpaid portions of his pension payments from the defendant, city of Berkeley.
 

 The facts, which are not in dispute, are as follows: The plaintiff was appointed chief of the Berkeley Fire Department on September 12, 1941, in which position he served continuously until his retirement on August 1, 1953, having completed more than 30 years of service as a member of that department. At the time of his appointment as fire chief the salary for that position was the sum of $375 per month. There were several subsequent increases to $609 per month until September 1, 1949, when the defendant city adopted an ordinance providing for a salary range or step plan for the position of fire chief. There were five steps provided for with salaries fixed in each step at $575, $606, $637, $668 and $700, respectively. The city manager was empowered by ordinance to determine the salary step at which the fire chief should be paid. Upon the inauguration of the said step plan the plaintiff was placed in the highest or top step and was paid $700 per month. He continued to be paid at the top step, receiving the increases in pay attached to that step from time to time, until his retirement when his pension was fixed at $516.87 per month on the basis of two-thirds of the average monthly salary received by him during the three years immediately preceding his retirement. There have been three fire chiefs since plaintiff’s retirement. The first of these served from August 1, 1953, to November 2, 1956, during which time he was placed successively in the first, second, third, fourth and top steps. The second, who served from November 2, 1956, to February 28, 1957, was designated to the first step only. The third and current chief was placed in the first step upon his appointment on March 1, 1957, and was advanced successively to the second, third, and fourth steps. Plaintiff’s pension has been computed on the basis of the current salary paid to the active
 
 *494
 
 fire chief and at the rate attached to the step to which the latter was designated, The plaintiff contends that his pension should be based upon the salary fixed for the top step regardless of the current salary being paid to the active chief. The trial court agreed with the plaintiff’s contention and gave judgment accordingly.
 

 The present case concerns itself with the interpretation of section 7(c) of Ordinance 2188-N.S. of the city of Berkeley which provides for a pension on retirement after 30 years of aggregate service of “. . . two-thirds of the average salary attached to the rank or ranks held during the three years immediately preceding the date of retirement. ’ ’ The particular language of this ordinance was before our Supreme Court in
 
 Terry
 
 v.
 
 City of Berkeley,
 
 41 Cal.2d 698 [263 P.2d 833]. The Terry case construed the ordinance as one providing for a fluctuating pension which increases or decreases as the average salary of the rank or ranks held by the retired employee increases or decreases; that the three-year period defines only the rank held and not the salary earned; and that the salary attached to the rank at the time payment falls due rather than the salary at the time the pension was awarded measures the amount of the pension. The ordinance was subsequently construed in
 
 Eichelberger
 
 v.
 
 City of Berkeley,
 
 46 Cal.2d 182 [293 P.2d 1], and in
 
 Glaeser
 
 v.
 
 City of Berkeley,
 
 148 Cal.App.2d 614 [307 P.2d 61], wherein the principles stated in the Terry ease were applied to the factual situation presented. (See also:
 
 Casserly
 
 v.
 
 City of Oakland,
 
 6 Cal.2d 64 [56 P.2d 237];
 
 English
 
 v.
 
 City of Long Beach,
 
 126 Cal.App.2d 414 [272 P.2d 875];
 
 Klench
 
 v.
 
 Board of Pension Fund Commrs.,
 
 79 Cal.App. 171 [249 P. 46];
 
 Aitken
 
 v.
 
 Boche,
 
 48 Cal.App. 753 [192 P. 464];
 
 Rumetsch
 
 v.
 
 Davie,
 
 47 Cal.App. 512 [190 P. 1075].)
 

 The pertinent question presented by this appeal involves the meaning of the word “rank.” The defendants contend that there is only one rank of fire chief with five different salary ranges. The plaintiff takes the position that each step of salary range is a rank in and of itself.
 

 In interpreting pension statutes and provisions we are confronted at the very outset with the basic and well settled rules that pension statutes are to be liberally construed in favor of the applicant and to effectuate their beneficent purposes
 
 (Terry
 
 v.
 
 City of Berkeley, supra,
 
 41 Cal.2d 698;
 
 Gibson
 
 v.
 
 City of San Diego,
 
 25 Cal.2d 930 [156 P.2d 737];
 
 City of Long Beach
 
 v.
 
 Allen,
 
 143 Cal.App.2d 35 [300 P.2d
 
 *495
 
 356]), that a retired employee has a vested contractual right protected by constitutional guaranties in a pension, and that such a pension may not be changed to his detriment.
 
 (Terry
 
 v.
 
 City of Berkeley, supra,
 
 41 Cal.2d 698;
 
 City of Long Beach
 
 v.
 
 Allen, supra,
 
 143 Cal.App.2d 35;
 
 English
 
 v.
 
 City of Long Beach, supra,
 
 126 Cal.App.2d 414.)
 

 The meaning of the word “rank” as defined in Webster’s Dictionary is “grade of official standing; relative position in civil or social life or in any scale of comparison; status; grade.” Giving the word “rank” its ordinary and usual meaning we find that it includes each grade, status or scale of comparison within the position bearing the title of fire chief. To restrict its meaning solely to the title of the position and its attendant duties would result in ignoring certain important incidents which attach to the relative importance of each gradation in the step plan and which serve to distinguish the status of each incumbent in the particular step, These are the important considerations of merit, experience and longevity which the framers of the ordinance had in mind when they provided for the five steps of salary range. The relative importance to the city of a fire chief with a long period of service and experience as compared to one in his first or second year of service is so apparent that it requires no discussion. The city council must have had these considerations in mind else it would have left the salary ordinance as it was formerly, i.e., with only one specific salary attached to the position of fire chief. We are fortified in our conclusion by the record in this ease which discloses that in his application of the step plan the city manager has placed each of the successor chiefs upon their appointment in the first step, and that with the exception of the second who served only for a brief time, the others were successively moved to the second, third and fourth steps at six-month intervals, the advance being, as testified by the city auditor, “a sort of a merit increase.” The relative status, experience and merit of the plaintiff himself were recognized when he was forthwith placed in the top step upon the inauguration of the step plan. The use of the designation “top step” in the city’s employment files is persuasive that a special dignity was placed upon this step as distinguished from the lower steps.
 

 We are not concerned here solely with the rank attached to the mere occupancy of the position of fire chief and the title it bears, but with the particular incidents of the rank which may give it a higher salary not enjoyed by others who may
 
 *496
 
 occupy the same position and title. When the plaintiff retired he was receiving the salary attached to the rank which was recognized by the incidents which entitled it to the designation “top step.” His pension was based upon his holding of that rank for the three years preceding his retirement. These were matured pension rights which could not thereafter be changed to his disadvantage. The effect of the defendants’ contention would be to downgrade the plaintiff each time a fire chief was placed in any step other than “top step.” To do so would be to ignore the primary function of the fluctuating pension plan stated in the Terry case.
 

 In
 
 City of Long Beach
 
 v.
 
 Allen, supra,
 
 143 Cal.App.2d 35, a “step plan” ordinance for policemen was passed after the retirement of the appellants, retired police officers, who, at the time of their retirement were receiving the highest salary for their respective positions, and whose pensions were fixed on that basis. The new ordinance divided the positions into various gradations with different salaries, and imposed conditions for reaching the top grade and highest salary. The city took the position that appellants could never become eligible for a pension based on the top salary currently paid to the officers holding the same positions from which they retired because, having retired, they could not meet the conditions imposed in the new ordinance. The court rejected this contention and held that the effect of the new ordinance was to downgrade the pensioners; that it “operated to [their] detriment”; and that it “violated the vested contractual pension rights they had acquired upon their retirement . . . contrary to the principles announced in the Terry and English cases. . . .” In the recent ease of
 
 Abbott
 
 v.
 
 City of Los Angeles,
 
 178 Cal.App.2d 204 [3 Cal.Rptr. 127], the court applied the reasoning of the Allen case and held that longevity and merit pay provided for in a new ordinance constituted a part of the “salary attached to the rank or position” formerly held by retired pensioners whose pension was based on the highest salary received at the time of retirement, and that such additional pay should be computed in their pensions even though the retired employees could not because of their retirement comply with the conditions that entitled the active employees to the merit and longevity pay.
 

 The gist of the Allen and Abbott cases is that when an employee has achieved the “top position in his particular rank” and is receiving the highest salary at the time of his retirement and is paid a pension on that basis, he is thereafter
 

 
 *497
 
 entitled to a pension based on the top salary currently paid to the employee holding the rank from which he retired, even though under existing legislation the requirements for earning the retirement benefits are different from those under which his were earned. In the present ease we are not concerned with additional compensation entering into the computation of the highest salary paid, but the rules announced in these cases are demonstrative of the fundamental principle which militates against the erosion of benefits which have matured. The effect of the defendants’ contention here is to erode plaintiff’s benefits because there is no one currently holding the status of “Chief (Top step).” The ordinance in question contains the language “salary attached to the rank,” the implication being that if there is such a rank, the salary attached to it will be the measure of the pension payment even though there is no one actively occupying the rank. In the ease of
 
 Klench
 
 v.
 
 Board of Pension Fund Commrs., supra,
 
 79 Cal.App. 171, a statute provided that a police officer was entitled to a specific pension equal to one-half of the amount of salary attached to the rank he may have held on the date of his retirement. The following language of that case at page 187 was quoted with approval in the Terry and Casserly cases, to wit: “. . . it is our belief that the word ‘salary’ as used in . . . said act was intended to refer to the rank of the retired police officer and not to the time at which he was retired. In other words, the section as phrased seems clearly enough to indicate that what the legislature intended thereby to declare was that, on being retired under said act, a member of the police department should be paid a pension based upon the salary
 
 which may be paid to
 
 police officers of the rank held by him at the time of the retirement of such officer.” (Emphasis added.) It is just as much the intent of the ordinance to recognize the degree of the retired employee’s achievement and to adequately reward him, as it is to maintain the equality of position between the retired employee and the current employee who may hold the same position. Thus is achieved a “primary purpose of the fluctuating pension plan, which is to guarantee the pensioner ... a fairly constant standard of living despite the inflationary tendencies of the economy. ...”
 
 (Abbott
 
 v.
 
 City of Los Angeles, supra,
 
 178 Cal.App.2d 204, 215;
 
 Allen
 
 v.
 
 City of Long Beach,
 
 45 Cal.2d 128, 132 [287 P.2d 765].)
 

 Applying the principles of the eases cited and the analogies of
 
 City of Long Beach
 
 v.
 
 Allen, supra,
 
 143 Cal.App.2d 35,
 
 *498
 
 and
 
 Abbott
 
 v.
 
 City of Los Angeles, supra,
 
 178 Cal.App.2d 204, to the present case, we conclude that plaintiff is entitled to a pension based upon the salary currently attached to and applicable to the rank of “Chief (Top step).”
 

 The judgment is affirmed.
 

 Bray, P. J., and Duniway, J., concurred.
 

 *
 

 Assigned by Chairman of Judicial Council.