[Sac. No. 7823.   In Bank.   May 8, 1969.]

WAYNE L. FERDIG, Plaintiff and Appellant, v. STATE PERSONNEL BOARD et al., Defendant and Respondent.

Walter W. Taylor for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, William M. Goode and Robert Burton, Deputy Attorneys General, and Harry T. Kaneko for Defendants and Respondents.

SULLIVAN, J.—This is an appeal from a judgment denying a writ of mandate to compel respondent State Personnel Board (Board)[1] to set aside and annul its order revoking the appointment of appellant Wayne L. Ferdig to a state civil service position, and to reinstate appellant in said position.

The facts are not in dispute and, as disclosed by the trial court's findings and the documents in the record, are as follows: On May 14, 1962, appellant was appointed to the class of Refrigeration Engineman with no veterans' preference requested or applied to his score. On March 12, 1963, he was transferred to the class of Office Building Engineer.

On July 20, 1963, appellant took an examination for class of Chief Engineer II in the Department of General Services and the employment list established on October 1, 1963, ranked him as number 16. On October 17, 1963, he applied to the Department of Veterans Affairs (Department) for a veterans' preference, presenting a certificate of discharge. This document was issued by the United States Naval Service and certified in substance that appellant, described therein as "APPRENTICE SEAMAN, CLASS M-1" had been honorably discharged from said service. It indicates on its face appellant's service in the United States Naval Reserve, as distinguished from the United States Navy; another document in the record refers to appellant's service as "war-time service in the merchant marine." As a result of said presentation, the Department of Veterans Affairs notified the Board that veterans' preference points were applicable to appellant's score, thereby moving appellant up to number 4 on the list.

As a result of a waiver by a person ahead of him, appellant then became one of the top three on the list and thus eligible

[1]Respondents named in the court below were the following: (a) The Board and members Joseph L. Wyatt, Jr., Robert S. Ash, May Layne Bonnell, Ford A. Chatters and Samuel Leask, Jr.; (b) Theodore J. Walas; Frederick Granberg and Murray J. Hunter, three individuals entitled to certification for the position involved on the alleged ground that appellant's certification was illegal; and (c) nine individuals ranking above appellant on the employment list on the alleged ground that the allowance of veterans' preference credits to appellant was illegal. The record discloses that only those named in (a) and (b) appeared in the court below. Respondents named in (a) have appeared in this court through the Attorney General; respondent Walas did not file a brief herein but appeared by counsel at oral argument; the other respondents have not appeared herein.

for appointment. On August 24, 1964, he was appointed to the position of Chief Engineer II. Without the addition of veterans' points, he would not have been within the top three on the list.

On September 25, 1964, the question was raised with the Department of Veterans Affairs as to whether the application of veterans' preference points to appellant's case was proper. The Department then requested appellant to resubmit the documents supporting his claim therefor. On November 9, 1964, approximately nine weeks after appellant's appointment to the position, the Department advised appellant that his application for the points had been approved erroneously. Appellant objected to this determination and the Departent directed an inquiry to the appropriate federal agency as to whether appellant's service and training in the Naval Service was considered active duty in the armed forces of the United States.

On January 4, 1965, an officer of Local 411 of the Union of State Employees, by letter to the Board, questioned the legality of appellant's appointment as Chief Engineer II. Shortly thereafter the Judge Advocate of the Department of the Navy advised the Department of Veterans affairs that appellant had performed no active duty or other active naval service. The latter Department thereupon notified both appellant and the Board that it had removed appellant's veterans' preference. On April 9, 1965, the Board, after a hearing, made its order revoking appellant's appointment "from the beginning."

The trial court, concluding that the Board had acted lawfully, denied appellant's petition for a peremptory writ of mandate and discharged the alternative writ theretofore issued. This appeal followed.

Appellant makes no claim before us that he is, or ever was, a veteran as that term is used in Government Code section 18973[2] which provides for additional credits for veterans attaining passing marks in specified examinations. Essentially he advances two contentions: First, that the jurisdiction of the Board to remove civil service employees is expressly limited by statute and appellant's removal was not authorized by any statute; and second, that although the Board's action in crediting him with veterans' preference points was errone-

[2]Hereafter, unless otherwise indicated, all section references are to the Government Code.

ous, it had nevertheless become final and the Board was without jurisdiction to reconsider or correct it.

We turn first to the circumstances of appellant's appointment. The record before us establishes without any contradiction that appellant was not entitled at any time to the veterans preference points which advanced him from number 16 to number 4 and eventually to number 3 on the list, and thereby made him eligible for appointment.

■ Section 18973 at the times here material provided that in certain examinations "a veteran with 30 days or more of service" who becomes "eligible for certification from eligible lists by attaining the passing mark established for the examination" shall be allowed specified additional points. The statute further provided: "For the purpose of this section, 'veteran' means any person who has served full time for 30 days or more in the armed forces in time of war or in time of peace in a campaign or expedition for service in which a medal has been authorized by the Government of the United States, or during the period September 16, 1940, to December 6, 1941, inclusive, or during the period June 27, 1950, to January 31, 1955, and who has been discharged or released under conditions other than dishonorable, . . ."[3]

■ Appellant was not a "veteran" within the meaning of the above statute. His service in the merchant marine did not satisfy the statutory service requirements specified as essential for a veterans' preference. The plain fact of the matter is that appellant was not entitled to any veterans' preference credits. Indeed, appellant himself seems to concede all this.

Authority to determine the allowance of veterans' preferences emanates from the California Constitution[4] and has been in turn conferred by the Legislature upon the Department of Veterans Affairs. (§ 18976.)[5] The Department is thus

[3] Section 18973 underwent minor revisions in 1967 and 1968 which are not material in the present case.

[4] Section 7 (entitled "Veterans' Preferences") of article XXIV (entitled "State Civil Service") of the California Constitution provides: Nothing herein contained shall prevent or modify the giving of preferences in appointments and promotions in the State civil service to veterans and widows of veterans as is now or hereafter may be authorized the Legislature."

[5] Section 18976 provides: "Request for and proof of eligibility for veterans' preference credits shall be submitted by the veteran to the Department of Veterans Affairs. The procedures and time of filing such request shall be subject to rules promulgated by the Department of Veterans Affairs. After the State Personnel Board certifies that all parts of an examination have been completed and the relative standings of candidates are ready to be computed the Department of Veterans Affairs

charged with the responsibility of notifying the State Personnel Board which candidates have qualified for veterans' preference. We think it is clear that in carrying out this responsibility the Department must make its determination in accordance with the statute allowing the additional credits. (§ 18973 ; see fn. 3, *ante*.)

But the veteran himself has some responsibility in these matters. Under section 18976 : "Request for and *proof of eligibility for veterans' preference credits* shall be submitted *by the veteran* to the Department of Veterans' Affairs." (§ 18976). (Italics added.) In the instant case, appellant's application for veterans' preference made on an official form of the Department is before us. At the top of the document in large bold type appears the following: "INSTRUCTIONS AND ELIGIBILITY REQUIREMENTS ARE LISTED ON THE BACK OF THIS APPLICATION." The reverse of the document contains, among other things, an explicit statement of the eligibility requirements in accordance with the language of section 18973.[6] Immediately above appellant's signature on the face of the application appears the following: "SIGNATURE: I HEREBY CERTIFY that I am eligible for veterans' preference and that the statements on this application are true, and I agree and understand that any misrepresentation of material facts herein may cause forfeiture of all right to any employment in the service of the State of California."

In sum, not only was the allowance of a veteran's preference to appellant unauthorized because he was at no time a veteran; it was also made as a consequence of appellant's erroneous representation to the Department that he was a veteran, when in fact he was not. Although appellant's representation may have been made in good faith and the Department's action may be characterized as a mistake, nevertheless the fact remains that the Department notified the Board that appellant was a candidate who qualified for veterans' preference credits on the examination (§ 18976) when in fact he did not.

The action of the Department which appellant invoked by his request for veterans' preference credits was an integral

---

shall notify the State Personnel Board which candidates have qualified for veteran preference credits on the examination."

[6]For example the first sentence reads in pertinent part as follows: "Only veterans with active service in the *armed forces* of the United States *in time of war*, or in time of peace in a campaign or expedition for service in which a medal has been authorized by the Government of the United States . . . may receive a 10-point preference on State of California civil service examination . . . ." (Italics added.)

part of the civil service system established by the people (Cal. Const., art. XXIV; see *Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634, 639 [234 P.2d 981]) and implemented by the Legislature through the State Civil Service Act (Act) (§§ 18500-19765). This system is grounded upon the constitutional mandate that permanent appointments and promotion in the state civil service shall be "based upon merit, efficiency and fitness as ascertained by competitive examination." (Cal. Const., art. XXIV, § 1; see Gov. Code, §§ 18500, 18930, 18950). The Act provides a detailed method of carrying out this mandate (§ 18500, subds. (a) and (c)) so that among other objectives, appointments shall be based upon merit and fitness (§ 18500, subd. (c) (2)) and state civil service employment can be made a career. (§ 18500, subd. (c) (3).) It is manifest from an examination of the Act that the Legislature has taken great pains to prescribe exactly how appointment to state civil service positions is to be made. (See for example §§ 18532, 18900, 18950, 19052.) This finds emphatic confirmation in section 19050: "The appointing power in all cases not excepted or exempted by virtue of the provisions of Article XXIV of the Constitution shall fill positions by appointment, including cases of transfers, reinstatements, promotions and demotions, in strict accordance with this part and the rules prescribed from time to time hereunder, *and not otherwise.* Except as provided in this part, appointments to vacant positions shall be made from employment lists." (Italics added.)

▮ Viewing in this context the provisions of the Act dealing with veterans' preferences, we have no hesitancy in concluding that where, as in the instant case, a person on an eligible list claiming to be a veteran is not in fact a veteran, he is not entitled to receive veterans' preference credits, the Department of Veterans Affairs is without power to certify that he is entitled, and the State Personnel Board is without power to allow such credits.

▮ It is settled principle that administrative agencies have only such powers as have been conferred on them, expressly or by implication, by constitution or statute. (*United States Fid. & Guar. Co.* v. *Superior Court* (1931) 214 Cal. 468, 471 [6 P.2d 243]; *Pacific Employers Ins. Co.* v. *French* (1931) 212 Cal. 139, 141-142 [298 P. 23]; *Grigsby* v. *King* (1927) 202 Cal. 299, 304 [260 P. 789]; *Garvin* v. *Chambers* (1924) 195 Cal. 212, 220-223 [232 P. 696]; *Motor Transit Co.* v. *Railroad Com.* (1922) 189 Cal. 573, 577 [209 P. 586]; see *Pacific Tel. & Tel. Co.* v. *Public Utilities Com.* (1950) 34 Cal.2d 822 [215

P.2d 441] ; *State Comp. Ins. Fund* v. *Industrial Acc. Com.* (1942) 20 Cal.2d 264, 266 [125 P.2d 42] ; *Allen* v. *McKinley* (1941) 18 Cal.2d 697, 705 [117 P.2d 342] ; 1 Am.Jur.2d Administrative Law, § 70, p. 866.) An administrative agency, therefore, must act within the powers conferred upon it by law and may not validly act in excess of such powers. (See cases cited immediately above; see 2 Am.Jur.2d, Administrative Law, § 188, pp. 21-22.) ▇▇▇ In accordance with these principles, it has been held in this state, in matters pertaining to civil service and in other contexts, that when an administrative agency acts in excess of, or in violation, of the powers conferred upon it, its action thus taken is void. (See *Aylward* v. *State Board of Chiropractic Examiners* (1948) 31 Cal.2d 833, 839 [192 P.2d 929] ; *Patten* v. *California State Personnel Board* (1951) 106 Cal.App.2d 168, 172-175 [234 P.2d 987] ; *Pinion* v. *State Personnel Board* (1938) 29 Cal.App.2d 314, 319 [84 P.2d 185] ; *Campbell* v. *City of Los Angeles* (1941) 47 Cal.App.2d 310, 313 [117 P.2d 901].) To hold otherwise in the case before us would be to frustrate the purpose of the civil service system.

Having concluded that appellant was not entitled to the appointment in the first place and that his appointment was void, we proceed to determine whether the Board had jurisdiction to revoke his appointment "from the beginning" and to remove him from his position. As we have already pointed out, appellant attacks such action on two broad grounds: First, he argues, the jurisdiction of the Board is expressly limited by statute and no statute authorizes his removal; secondly, since at the time of his removal he had already performed efficient service for more than the six months' probationary period, he had become a permanent employee and his appointment had become final.

Appellant's first argument is launched from section 19500[7] which deals with the tenure of permanent employees and their separation from state civil service. The gist of the argument is that none of the methods of separation delineated in section 19500 apply in the instant case, and that since the Legislature

---

[7]Section 19500 provides: "The tenure of every permanent employee holding a position is during good behavior. Any such employee may be temporarily separated from the State civil service through layoff, leave of absence, or suspension, permanently separated through resignation or removal for cause, or permanently or temporarily separated through retirement *or terminated for medical reasons under the provisions of Section 19253.5.*"
Section 19253.5 makes provision for a medical examination of an employee for purposes of evaluating his capacity to perform his duties.

has designated these methods of separation, it has of necessity excluded all others. The argument is misconceived and indeed ignores the circumstances of the problem before us. We are obviously not dealing with any of the situations covered by section 19500; nor are we dealing with a removal for cause based on any of the causes for discipline specified in section 19572.

What we examine here is the jurisdiction of the Board to take corrective action with respect to an appointment which it lacked authority to make. It defies logic to say that the mere enumeration in the Act of the methods of separating an employee from state civil service in a situation where an appointment has been validly made, compels the conclusion that no jurisdiction exists to rectify the action of the Board in a situation where an appointment has been made without authority.

It is true, as appellant argues, that the "State Personnel Board is a body of special and limited jurisdiction [and] . . . has no powers except such as the law of its creation has given it." (*Conover* v. *Board of Equalization* (1941) 44 Cal. App.2d 283, 287 [112 P.2d 341].) But article XXIV, section 3 of the California Constitution directs that the Board "shall administer and enforce" the civil service laws. The jurisdiction of the Board, including its adjudicating power is derived directly from this section. (*Boren* v. *State Personnel Board, supra,* 37 Cal.2d 634, 637-638; *Neely* v. *California State Personnel Board* (1965) 237 Cal.App.2d 487, 488-489 [47 Cal. Rptr. 64]) and the Board's authority is governed by the Constitution as well as by the Civil Service Act. (*Boren* v. *State Personnel Board, supra,* 37 Cal.2d 634, 640-641.)

Additionally we note that the Act provides in section 18670: "The board may hold hearings and make investigations *concerning all matters relating to the enforcement and effect of this part* and rules prescribed hereunder. It may inspect any State institution, office, or other place of employment affected by this part to *ascertain whether this part and the board rules are obeyed.*

"The board shall make investigations and hold hearings at the direction of the Governor or the Legislature or upon the petition of an employee or a citizen *concerning the enforcement and effect of this part and to enforce the observance of the provisions of Article XXIV of the Constitution and of this part* and the rules made hereunder." (Italics added.)

The provisions of the Constitution and of the Act to which

we have just referred, considered in the light of the purpose, objective and entire scheme of the civil service system, convince us that in the matter here under review the Board was invested with the power, and, indeed, charged with the duty, to "administer and enforce" the applicable sections dealing with veterans' preference credits. (§§ 18973, 18976; see text accompanying fn. 3, *ante*; see fn. 5, *ante*.) Thus, after having been notified by the Department of Veterans Affairs which candidates had qualified for veterans' preference credits (§ 18976), it was the duty of the Board to apply such credit (§ 18974) and eventually to certify the three highest names on the eligible list to the appointing power. (§ 19057.) Essentially and in the final analysis, it was the Board which was charged with the responsibility of coordinating all of the procedures of the Act to the end of certifying only those persons who were lawfully entitled to the position.[8] In this constitutional and legislative scheme, a determination made by the Department contrary to the provisions of the Act, albeit in good faith, as to qualification for veterans' preference credits could not be conclusive upon the Board. If this were so, the Board's power to administer and enforce the Act would be eroded and that body would be compelled to certify for appointment persons who were in fact not entitled to the position.

We conclude, therefore, that when the matter was brought to its attention, the Board had jurisdiction to inquire into and review the certification as to veterans' preference credits made by the Department of Veterans Affairs and having determined that appellant was not entitled to such credits, to take the corrective action which it did by revoking appellant's appointment. While this jurisdiction does not appear to have been conferred upon the Board in so many words by the express or precise language of constitutional or statutory provision, there can be no question that it is implicit in the constitutional and statutory scheme which empowers the Board to administer and enforce the civil service laws.

[8]We emphasize that the determination of eligibility for veterans' preference credits is only one step in a procedure designed to have promotions and appointments based upon merit, efficiency and fitness. To accomplish this objective, the Board is charged, inter alia, with the responsibility of administering competitive examinations (§ 18930), setting passing grades (§ 18937), determining each competitor's earned rating (§ 18936), modifying these ratings by applying veterans' preference points (§ 18974) preparing eligible lists of those persons who may be lawfully appointed to any position within the class for which the examination is held (§ 18900), and certifying the three highest names to the appointing power. (§ 19057.)

We are satisfied that the Board was well within its power in entertaining the challenge made to the legality of appellant's appointment, in holding a hearing and conducting an investigation on such complaint, and in rectifying the appointment which had been improperly and unlawfully made, although made in good faith. In this, as we have already pointed out, the Board apparently received the prompt and full cooperation of the Department of Veterans Affairs which itself reexamined appellant's eligibility for veterans' preference credits and removed the preference. In the light of this background—an objection raised with the Department only a month after appellant's appointment, an objection made to the Board approximately three months later, and the prompt review of the matter by both agencies—appellant's insistent claim to an appointment to which he was not entitled in the first place, is exposed as utterly groundless. We can apprehend neither reason nor fairness in the position of appellant, who seemingly acknowledges that he was at no time a veteran within the terms of the statute but nevertheless insists that he should be permitted to retain the veteran's benefits to which he was never entitled.

We therefore reject appellant's arguments, first, that the Board having once made a good faith determination as to appellant's position on the list and having acted upon it, had no reserved power to annul its action; and second, that the appointment having once been accepted in good faith by appellant who performed efficiently in the position for the probationary period, could not be thereafter revoked by the Board.

As to the first argument, we have already explained why the Board had jurisdiction to review the matter and to take the corrective action it did. Our conclusions on this point are consistent with California precedents. In the cases already cited exemplifying the principle that appointments in violation of the civil service laws are void, it was recognized that the appropriate board had jurisdiction to correct the unlawful action taken. In *Campbell* v. *City of Los Angeles, supra,* 47 Cal.App.2d 310, mandate was denied to compel reinstatement of a civil service employee who had been reappointed after having been illegally restored to the eligibility list by the civil service commission and was subsequently discharged on the ground that since his restoration to the list was illegal, his appointment was illegal. Although the discharge seems to have been initially made by the department head, it was

passed upon and sustained by the civil service commission. In *Pinion* v. *State Personnel Board, supra,* 29 Cal.App.2d 314, the court denied mandate to compel the Board to recognize the petitioners, who had permanent status under civil service, as properly holding certain civil service positions although they had been actually certified for only a class of junior positions. It was there said: ''The only positions lawfully held by these petitioners are those for which they were examined and to which they were certified and appointed in the manner provided by law.'' (29 Cal.App.2d at p. 318.) In *Aylward* v. *State Board of Chiropractic Examiners, supra,* 31 Cal.2d 833, 839, we said: ''Implicit in the cases denying a board's power to review or reexamine a question, however, is the qualification that the board must have acted within its jurisdiction and within the powers conferred on it. Where a board's order is not based upon a determination of fact, but upon an erroneous conclusion of law, and is without the board's authority, the order is clearly void and hence subject to collateral attack, and there is no good reason for holding the order binding on the board. Not only will a court refuse to grant mandate to enforce a void order of such a board [citations], but mandate will lie to compel the board to nullify or rescind its void acts. [Citation.] While a board may have exhausted its power to act when it has proceeded within its powers, it cannot be said to have exhausted its power by doing an act which it had no power to do or by making a determination without sufficient evidence. In such a case, the power to act legally has not been exercised, the doing of the void act is a nullity, and the board still has unexercised power to proceed within its jurisdiction.''[9]

▉ Appellant's second argument, namely, that his appointment could not be revoked after the expiration of a six months probationary period, is also without merit. Section 19173 provides: ''Any probationer may be rejected by the appointing power during the probationary period for reasons relating to the probationer's qualifications, the good of the service, or failure to demonstrate merit, efficiency, fitness, and moral responsibility. . . .'' Here, appellant was qualified for the position in question because he passed the examination, but he was not eligible to be certified for it; it is not disputed that he

---

[9]Strangely enough, appellant while challenging the jurisdiction of the Board to take corrective action in the case before us, appears to recognize the inherent inequity of his position and goes out of his way to inform us that he is *not* arguing that a court, rather than the Board, ''could not . . . have removed [him] from his position pursuant to its general equity jurisdiction.''

performed satisfactorily up to the time of his dismissal. Therefore, none of the grounds provided in section 19173 were available to the appointing power (Department of General Services) or the Board to dismiss appellant during his probationary period. Nor was section 19173 intended to cure any defect in certification and appointment deriving from violation of the civil service statutes. Appellant's separation from the position to which he now seeks reinstatement was effectuated under the implied power of the Board to rectify appointments made in violation of the civil service laws. For this reason, provisions for rejection during the probationary period are inapposite here.

It is convenient at this point to observe that *after* the occurrence of the events here involved and *after* the decision of the Court of Appeal in this case, the Legislature at its 1968 regular session enacted Government Code section 19257.5 which provides: "Where the appointment of an employee has been made and accepted in good faith, but where such appointment would not have been made but for some mistake of law or fact which if known to the parties would have rendered the appointment unlawful when made, the board may declare the appointment void from the beginning *if such action is taken within one year after the appointment.*" (Italics added.) (Added by Stats. 1968, ch. 500, § 1; in effect November 13, 1968.) The above section is of course not applicable to the case at bench. We wish to make clear, nevertheless, that our views and holdings in the instant case apply to a situation arising before the enactment of the statute and should not be deemed as derogating from, or otherwise affecting the proper operative effect of, the above statute, particularly the last clause thereof.

Finally, appellant contends that the Board by its own rules was divested of jurisdiction "to accept the appeal" or to take action on April 9, 1965. The point of this argument is that appellant's appointment was made on August 24, 1964. and under the Board's rule 64 "every appeal shall be filed with the board . . . within 30 days after the event happened upon which the appeal is based. Upon good cause being shown the board . . . may allow such an appeal to be filed within 30 days after the end of the period in which the appeal should have been filed." Therefore, argues appellant, the protest made by the officer of the union on January 4, 1965, was an untimely appeal.

There are two answers. Assuming, that the above rules

governed, we think that any "appeal" to the Board was timely made after the Department of Veterans Affairs on January 19, 1965, formally notified the Board that appellant's veterans' preference had been "removed." Second, and more importantly, we do not believe that it was necesary to file an "appeal" to the Board, which, upon the matter being called to its attention, clearly had jurisdiction to review and correct the initial action taken.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.